1  Adam Paul Baas (Bar No. CA-220464)
   Adam.Baas@dlapiper.com
2  Elizabeth Cherise Callahan (Bar No. CA-323510)
   Elizabeth.Callahan@dlapiper.com
3  **DLA PIPER LLP (US)**
   555 Mission Street
4  Suite 2400
   San Francisco, California 94105-2933
5  Tel:   415.836.2500
   Fax:  415.836.2501
6
   Attorneys for Plaintiff
7

8                     **UNITED STATES DISTRICT COURT**

9                     **CENTRAL DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  MANFIELD PARTNERSHIP #2 LP, | CASE NO. 2:21-CV-07860 |
| 12                    Plaintiff, | **COMPLAINT FOR:** |
| 13       v. | (1) COST RECOVERY PURSUANT TO CERCLA – 42 U.S.C. § 9607 ET SEQ. |
| 14  CAL PLATE, INC., a California corporation, AND DOES 1 THROUGH 10, INCLUSIVE, | (2) CONTRIBUTION PURSUANT CERCLA – 42 U.S.C. § 9613 ET SEQ. |
| 16                    Defendant. | (3) CONTRIBUTION UNDER THE HAZARDOUS SUBSTANCE ACCOUNT ACT, CALIFORNIA HEALTH & SAFETY CODE §25300 ET SEQ. |
| | (4) EQUITABLE CONTRIBUTION |
| | (5) NEGLIGENCE |
| | (6) PRIVATE NUISANCE |
| | (7) PUBLIC NUISANCE |
| | (8) CONTINUING TRESPASS |
| | (9) DECLARATORY RELIEF |
| | (10) DECLARATORY RELIEF UNDER CERCLA |
| | AND DEMAND FOR JURY TRIAL |

Plaintiff alleges:

## **PARTIES**

1. Plaintiff Manfield Partnership #2 LP ("Manfield" and/or "Plaintiff") is a limited partnership formed and existing under the laws of the State of California.

2. Defendant Cal Plate, Inc. ("Cal Plate" and/or "Defendant") is a corporation organized and existing under the laws of the State of California.

3. The true names and capacities of the defendants sued herein as Does 1 through 10, inclusive, are unknown to Plaintiff, which therefore sued defendants by fictitious names. Plaintiff will amend this Complaint to amend their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of said fictitiously named defendants is in some manner responsible, in whole or in part, for the matters alleged herein.

## **JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction pursuant to the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9613(b) and (f) and 42 U.S.C. § 9607; pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201; and pursuant to 28 U.S.C. § 1331.

5. This Court has jurisdiction over Plaintiff's claims brought under state law pursuant to 28 U.S.C. § 1367 and the pendent jurisdiction doctrine. Plaintiff's state law claims arise from the same nucleus of operative facts as the claims asserted under federal law. *See United Mine Workers v. Gibbs,* 383 U.S. 715, 725 (1966).

6. This action involves the property located at 17004 Alburtis Avenue, Artesia, California (hereinafter, the "Property").

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. §§ 6972(a), 9607 and 9613(b) because the Property is located within this District and because the acts that gave rise to Plaintiff's claims occurred in this District.

**GENERAL ALLEGATIONS**

8. Manfield is the current owner of the Property, a property located at 17004 Alburtis Avenue, Artesia, California, which is occupied by a commercial warehouse and a parking lot.

9. Manfield bought the Property in or about December 1990 and performed reasonable due diligence in purchasing the Property.

10. Manfield has never operated or occupied the Property, and at all times since its purchase of the Property, Manfield has been and remains today a passive owner of the Property.

11. In or around 1980 until in or around 1994, Cal Plate leased the Property and performed the following business operations at the Property:

 (a) Etching;

 (b) Polymer and metal casting;

 (c) Production of printing plates; and

 (d) Other industrial processes.

12. During its tenure as a tenant and operator at the Property, Cal Plate purchased, stored, used, and disposed of chlorinated volatile organic compounds ("cVOCs") including but not limited to the chlorinated solvents, tetrachloroethylene ("PCE") and/or trichloroethylene ("TCE").

13. Upon information and belief, Cal Plate stored various chemicals, such as nitric acid and chlorinated solvents within the Property's parking lot during its lease and operation of the Property.

14. Upon information and belief, Cal Plate used, stored, disposed of, and spilled cVOCs onto the Property throughout its operations at the Property, including but not limited to, upon the parking lot, within the building located on the Property, and throughout the related wastewater conveyance system.

15. On behalf of Manfield, Ramboll US Consulting, Inc. ("Ramboll"), Manfield's environmental consultant, has performed certain investigation activities

at and in the vicinity of the Property, including but not limited to soil, soil gas, groundwater and indoor air quality testing.

16. As a result of these investigations, a historical release or releases of cVOCs, including PCE, was discovered at the Property (collectively, the "Releases").

17. Results from the initial investigation demonstrate that soil and soil gas at the Property are impacted with cVOCs and groundwater at and emanating from the Property has been impacted with cVOCs with concentrations of PCE and TCE above the State of California's Maximum Contaminant Levels ("MCLs") for drinking water.

18. Manfield subsequently notified the Regional Water Quality Board (the "Regional Board") of the Releases and, on or about May 15, 2018, the Regional Board issued a Site Cleanup Program Oversight Cost Reimbursement Account letter to Manfield stating, in part, that: the Regional Board is the public agency with primary responsibility for the protection of the ground and surface water quality for the Property; the Release had degraded the groundwater quality and beneficial uses of the State's waters; and Section 13304 of the California Water Code (Porter Cologne Act) allows the Regional Board to recover reasonable expenses for overseeing the investigation and cleanup of the unregulated discharges adversely affecting the State's waters.

19. In or about June 2018, Manfield executed an Acknowledgment of Receipt of Cost Reimbursement Account Letter with the Regional Board.

20. As a direct result of the Releases, Ramboll, on behalf of Manfield, has performed extensive Environmental Investigation work reported to and/or at the request and under the oversight of the Regional Board, including but not limited to soil, soil gas, groundwater and indoor air quality testing at and in the vicinity of the Property (collectively, "Environmental Investigation").

21. The results of the Environmental Investigation indicate the Releases are sourced from Cal Plate's historical operations, including but not limited to the storage, use, disposal, and spilling of cVOCs.

22. Upon information and belief, Cal Plate, at various times from the 1980s until in or around 1994, intentionally, negligently, and accidentally caused the cVOCs in the environment, including soil, land, vapor, groundwater, and the waters of the state of California, at the Property. The Regional Board agrees with this conclusion.

23. On or about July 14, 2020, the Regional Board issued a Draft Cleanup and Abatement Order to Cal Plate ("Cleanup Order"). The Cleanup Order ordered Cal Plate, as the historical operator responsible for the Releases, and Manfield, as the Property owner, to:

(a) Develop and update a Site Conceptual Model, which would include a written presentation with graphical illustrations of the discharge scenario, geology and hydrogeology, waste fate and transport in the soil matrix, soil vapor and groundwater, distribution of wastes (including geologic cross sections and iso-concentration contour maps), exposure pathways, sensitive receptors and other relevant information.

(b) Completely delineate the extent of wastes in the soil matrix, soil vapor, and groundwater caused by the discharge of volatile organic compounds and any other constituents of concern from the Property.

(c) Develop and implement vapor mitigation measures, which may include indoor air confirmation sampling, if the Regional Board so required.

(d) Conduct interim remedial action, prior to complete delineation of the subsurface impact, to reduce waste concentrations in highly impacted areas.

(e) Conduct remedial action, including developing and submitting a comprehensive Remedial Action Plan ("RAP") for soil matrix, soil

1
2
3
4
        vapor and groundwater contamination originating from the Property to the Regional Board for review and approval, implementing the RAP, and submitting quarterly remediation progress reports to the Regional Board.

5
6
7
  (f)    Conduct a human health risk assessment using concentrations of chemicals in the soil matrix, soil vapor and groundwater at the Property.

8
9
10
11
  (g)    Submit information and take action addressing public participation requirements of California Water Code sections 13307.5 and 13307.6, including a baseline community assessment, an interested persons contact list, and a draft fact sheet.

12
13
  (h)    Conduct groundwater monitoring to track changes in concentration of wastes originating from the Property.

14    24.    The Regional Board's investigation into the relevant facts and data, as
15 set forth in the Cleanup Order, concludes that records show that Cal Plate used PCE
16 during the production of printing plates and stored various chemical solvents at the
17 Property. The Cleanup Order further states that no records indicate that other
18 historical business operators besides Cal Plate used and/or stored PCE or TCE at the
19 Property and finds Cal Plate caused or permitted waste to be discharged or deposited
20 into the waters of the State.

21    25.    As of the date of this Complaint, Cal Plate has refused to accept
22 responsibility for the Releases and has objected to the Cleanup Order.

23    26.    Despite Cal Plate's continued refusal to cleanup its Releases at the
24 Property and recalcitrant position against the Regional Board, Manfield, through its
25 consultant, Ramboll, and in compliance with the Regional Board's oversight and
26 request, installed an interim remediation system at the Property in the form of a Soil
27 Vapor Extraction System ("SVE"). The SVE system is intended to (i) reduce
28 concentrations of cVOCs in the source area, (ii) minimize the potential for vapor

intrusion in the existing building at the neighboring property to the east of the Property, and (iii) minimize further migration of cVOCs in the subsurface both vertically and laterally.

27. As of the date of this Complaint, Manfield continues to cooperate with the Regional Board, including but not limited to, performing additional, ongoing Environmental Investigation at the Property and operating the SVE.

28. Should Cal Plate continue to shirk its responsibility for the Releases, Manfield will continue to incur response costs, including additional investigation and remediation costs, associated with the cVOCs in the soil and groundwater at and emanating from the Property.

29. Upon information and belief, once the Releases were discharged or released into the environment, the cVOCs continued to spread and migrate within the environment at and emanating from the Property.

30. Since the Releases were discovered and subsequently reported to the Regional Board, Manfield has been the sole party responding to, complying with, and performing the investigation and remediation work at the request of the Regional Board.

31. As of the date of this Complaint, Cal Plate refuses to take responsibility for the Releases it caused and the resulting contamination, which has caused significant damage and harm to Manfield.

## FIRST CAUSE OF ACTION
### (Response Cost Recovery Under CERCLA § 107)

32. Paragraphs 1 through 31 are realleged and incorporated herein by reference.

33. Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), provides:

    (1) the owner and operator of a vessel or a facility,

    (2) any person who at the time of disposal of any hazardous substance owned or operated any facility at

|     |     |
| --- | --- |
| 1   | which such hazardous substances were disposed of, |
| 2   | (3) any person who . . . arranged for disposal or |
| 3   | treatment, . . . of hazardous substances . . . at any facility |
| 4   | . . . |
| 5   | (4) . . . from which there is a release, or a threatened |
| 6   | release which causes the incurrence of response costs, of |
| 7   | a hazardous substance, shall be liable for – |
| 8   | (B) any other necessary costs of response incurred by any |
| 9   | other person consistent with the national contingency |
| 10  | plan; |
| 11  | . . . |
| 12  | (D) the costs of any health assessment or health effects |
| 13  | study carried out under section 9604(i) of this title. |
| 14  | The amounts recoverable in an action under this section |
| 15  | shall include interest on the amounts recoverable under |
| 16  | subparagraphs (A) through (D). . . . |

17  34. Defendant is a "person" as defined by Section 101(21) of CERCLA, 42
18  U.S.C. § 9601(21).
19  35. Does 1-10 are "persons" as defined by Section 101(21) of CERCLA,
20  42 U.S.C. § 9601(21).
21  36. The Property is a "facility" within the meaning of Section 101(9) of
22  CERCLA, 42 U.S.C. § 9601(9).
23  37. Defendant was an operated of the Property at the time cVOCs and other
24  hazardous substances were released or disposed of at the Property and is therefore
25  liable for the Releases at the Property, including releases of PCE and/or TCE.
26  38. Does 1-10 are persons liable under CERCLA § 107(a), 42 U.S.C. §
27  9706(a).
28  39. Manfield has incurred and will incur necessary costs of response and

health assessments pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), consistent with the National Contingency Plan ("NCP") as a result of releases and threatened releases (within the meaning of Section 101(22) of CERCLA, 42 U.S.C. § 9601(22)) of hazardous substances at and from the Property.

40. Defendant and Does 1-10 are responsible persons as defined in CERCLA § 107(a)(1), (2), (3), and/or (4), 42 U.S.C. § 9607(a)(1-4). Defendant and Does 1-10 are liable for all response costs incurred or to be incurred by Manfield. Alternatively, under 42 U.S.C. § 9607, Defendant is liable in contribution for Manfield's costs and expenses incurred in responding to past, present or future releases and/or pollution.

41. The costs of response incurred by Manfield in connection with the Releases have been necessary and incurred in a manner consistent with the National Contingency Plan, 40 C.F.R. Part 300 ("NCP").

42. Manfield has given or will give written notice of this action to the Attorney General of the United States and the Administrator of the United States Environmental Protection Agency pursuant to section 113(l) of CERCLA, 42 U.S.C. § 9613(l).

43. WHEREFORE, Manfield prays for judgment as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Contribution Pursuant to CERCLA § 113)

44. Paragraphs 1 through 43 are realleged and incorporated herein by reference.

45. At all relevant times, Manfield was a passive owner of the Property and has never operated any commercial or industrial business at the Property.

46. Defendant is a liable or potentially liable party for contamination at the Property under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

47. Does 1-10 are liable or potentially liable parties for contamination at the Property under Section 107(a) of CERCLA, 42 U.S.C. § 9607(a).

48. The costs of response incurred by Manfield in connection with the Releases have been necessary and incurred in a manner consistent with the NCP.

49. Pursuant to Section 113(f) of CERCLA, 42 U.S.C. § 9613(f), Manfield is entitled to contribution from Defendant and Does 1-10 for the costs and damages associated with contamination response activities at the Property.

50. WHEREFORE, Manfield prays for judgment as hereinafter set forth.

## THIRD CAUSE OF ACTION

### (Contribution and Indemnity Pursuant to California Hazardous Substances Account Act)

51. Paragraphs 1 through 50 are realleged and incorporated herein by reference.

52. The California Hazardous Substance Account Act ("HSAA"), Calif. Health & Safety Code section 25300 *et seq.* provides for an action by parties who have incurred removal or remediation costs under the HSAA. Pursuant to the HSAA, such parties may seek contribution or indemnity for those costs from any person who is a liable person within the meaning of Health & Safety Code section 25323.5.

53. Defendant is a person who is liable under such sections within the meaning of Section 25323.5 of the California Health & Safety Code.

54. Does 1-10 are persons who are liable under such sections within the meaning of Section 25323.5 of the California Health & Safety Code.

55. The Property is a "site" pursuant to California Health & Safety Code § 25323.9 because it is a "facility" pursuant to CERCLA § 101(9), 42 U.S.C. § 9601(9).

56. Manfield has incurred and will continue to incur necessary response costs with respect to the Releases and/or pollution caused by Defendant.

57. Manfield is informed and believes, and on that basis alleges, that the response actions undertaken by Manfield have been or will be pursuant to federal

10

1 and state authorization and approval under CERCLA and are or will be consistent
2 with the NCP.

3     58.    Manfield has satisfied any and all conditions precedent under
4 California law or otherwise to the undertaking of response actions and incurring of
5 response costs related to the Property and the recovery of such costs from
6 Defendant.

7     59.    Pursuant to California Health & Safety Code section 25363(d),
8 Manfield is entitled to indemnification and contribution from Defendant and Does
9 1-10 for all past and future response costs incurred by Manfield as a result of the
10 releases of hazardous substances at, under, or from the Property, together with
11 interest thereon, at the maximum rate allowed by law.

12     60.    Manfield has given or will give written notice of this action to the
13 Director of the Department of Toxic Substances Control pursuant to California
14 Health & Safety Code section 25363(d).

15     61.    WHEREFORE, Manfield prays for judgment as hereinafter set forth.

## FOURTH CAUSE OF ACTION
### (Equitable Contribution)

18     62.    Paragraphs 1 through 61 are realleged and incorporated herein by
19 reference.

20     63.    As a direct and proximate result of the releases or threatened Releases
21 of hazardous substances, including cVOCs, as alleged above, Manfield has incurred
22 and will incur response costs, beyond its share, if any, for investigation,
23 remediation, clean-up and abatement of the contamination.

24     64.    Manfield is informed and believes and on that basis alleges that the
25 conduct of Defendant was the proximate cause of the damages Manfield has and
26 will incur as a result of the Releases, which are the subject of the Regional Board's
27 draft Cleanup Order.

28     65.    Section 1432 of the California Civil Code states that "a party to a joint,

or joint and several obligation, who satisfies more than his share of the claim against all, may require a proportionate contribution from all the parties joined with him."

66. Under California Civil Code Section 1432 and under general principles of equity, Manfield is entitled to contribution from Defendant for its share of the response costs incurred and to be incurred by Manfield.

## FIFTH CAUSE OF ACTION
### (Negligence)

67. Paragraphs 1 through 66 are realleged and incorporated herein by reference.

68. At all times referred to or mentioned herein, it was reasonably foreseeable that the Property would be polluted and contaminated, and would be significantly adversely impacted by releases at and from the Property, of a "hazardous substance" within the meaning of that term as defined in section 101(14) of CERCLA, 42 U.S.C. §9601(14).

69. At all times referred to or mentioned herein, Defendants owed and continue to owe Manfield a duty to exercise due care in its historical occupation, utilization, operation and maintenance of the Property so as to avoid and prevent the release of hazardous substances, including cVOCs, onto and into the soil, groundwater, and air at or near the Property, and so that the hazardous substances present on the Property could not, did not and do not contaminate the soil or air, at or near the Property or the groundwater underlying the Property and other nearby areas.

70. Defendants knew or in the exercise of reasonable care should have known that the handling of various hazardous substances, including cVOCs, at the Property was subject to and regulated by federal and state statutes and/or local laws including, but not limited to, the following:

    (a)    CERCLA, 42 U.S.C. § 9601 *et seq*.;

    (b)    California Health and Safety Code § 25100 *et seq*.; and

(c) California Water Code § 13300 *et seq.*

71. Defendants failed to exercise due or ordinary care and was negligent in (1) the handling of hazardous substances on the Property; (2) the efforts to locate and remove hazardous substances from the Property; (3) the storage of hazardous substances at the Property; and (4) the management and supervision of the activities and operations on the Property.

72. Defendant's use and release of hazardous substances at and from the Property violates one or more of the statutes of the type identified above and negligence under the common law. Pollution of the soil, sediment, and groundwater on or near the Property occurred as a proximate result of the conduct comprising each statutory violation. These statutes were designed to prevent such damage, and each statute was designed to protect parties such as Manfield from such damage.

73. The failure of Defendants to exercise due and ordinary care with respect to the activities and matters set forth above, resulted in substantial damage to Manfield by polluting and contaminating the soil, air, and/or groundwater at and near the Property. These injuries are continuing.

74. As a proximate result of said negligent conduct, negligent action, and negligent omissions of Defendants, Manfield has incurred and will continue to incur substantial damages proximately caused by the pollution and pollution of the soil, and air at or near the Property, and/or the groundwater underlying the Property and other nearby lands. Manfield is informed and believes, and on that basis alleges, that the pollution caused by Defendant, and each of them, has also contaminated the soil, air, and/or groundwater at or near the Property.

75. WHEREFORE, Manfield prays for judgment as hereinafter set forth.

## SIXTH CAUSE OF ACTION
### (Continuing Private Nuisance)

76. Paragraphs 1 through 75 are realleged and incorporated herein by reference.

77. California Civil Code § 3479 defines a nuisance as follows:

> Anything that is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property ... is a nuisance.

78. The nuisance created by Defendants is of a continuing nature.

79. During its activities at the Property, Defendant created, and allowed to continue, conditions which constitute a private nuisance by causing and permitting the release of hazardous substances, including cVOCs, at and from the Property.

80. By intentionally and/or negligently causing a nuisance by contaminating the soil, soil gas, and groundwater at or near the Property, Defendants actions have injured Manfield.

81. This nuisance has substantially interfered with Manfield's use and enjoyment of the property, and has created a risk to human health and the environment.

82. Because of the continuous nature of the migration of the contamination, Defendants' activities have resulted in a continuing nuisance upon the Property that is abatable.

83. Despite demands from Manfield and the Regional Board, Defendant has refused or otherwise failed to abate this nuisance.

84. Manfield has incurred and will continue to incur substantial damages because of the nuisance.

85. The nuisance created by Defendants can be reasonably abated with existing technology. Defendants can and should use this technology to abate the nuisance.

86. WHEREFORE, Manfield prays for judgment as hereinafter set forth.

### SEVENTH CAUSE OF ACTION
### (Continuing Public Nuisance)

87. Paragraphs 1 through 86 are realleged and incorporated herein by

reference.

88. The nuisance described above threatens to affect the community in and around the Property and impacts the groundwater and soil in the area.

89. Manfield is informed and believes, and thereon alleges, that the pollution caused by Defendants can migrate to other land and water subject to use and actually being used by third parties.

90. Manfield is informed and believes, and on that basis alleges, that the pollution caused by Defendants has been and is continuing to be released to the soil and groundwater at or near the Property so as to affect members of the general public.

91. Abatement of the pollution caused by Defendants will prevent the pollution from affecting the Property, and adjacent land and/or groundwater being used by third parties and/or the general public.

92. Manfield has incurred and continue to incur special injuries and costs as a direct and proximate result of this public nuisance, injuries which the general public has not suffered.

93. The public nuisance created by Defendants can be reasonably abated with existing technology. Defendants can and should use this technology to abate the nuisance.

94. As the direct and proximate result of the public nuisance caused by Defendants, Manfield has been damaged, and in accordance with California Code of Civil Procedure section 731, Manfield is entitled to damages as well as injunctive relief.

95. Manfield requests an injunction to require Defendant to remediate the contaminated soil, and groundwater below and near the Property and abate any continuing pollution of the environment by the Property.

//

//

## EIGHTH CAUSE OF ACTION
### (Continuing Trespass)

96. Paragraphs 1 through 95 are realleged and incorporated herein by reference.

97. As a direct and proximate result of the acts or omissions of Defendants, the Property has been physically and tortiously invaded by the release of contaminants, including cVOCs.

98. The intentional, reckless and/or negligent use and handling by Defendants, and each of them, of the contaminants, including cVOCs, has proximately caused the unauthorized and wrongful deposit of contaminants, including cVOCs, at, under, or from the Property, which continue to be present and which constitute a continuing trespass on the Property.

99. The contamination caused by Defendants' continuing trespass is reasonably abatable. However, despite being asked to abate and remediate its contamination, Cal Plate has refused to do so.

100. The presence of the cVOCs, which have resulted from the acts or omissions of Defendants, continues to contaminate and damage the Property.

101. As a direct and proximate result of the continuing trespass by Defendants, Manfield has been damaged in an amount to be proven at trial.

102. Manfield's damages include, but are not limited to, past costs reasonably incurred and future costs to be incurred to restore the Property to its original condition together with damages for any lost use incurred by Plaintiff during the time of the continuing wrongful trespass.

## NINTH CAUSE OF ACTION
### (Declaratory Relief)

103. Paragraphs 1 through 102 are realleged and incorporated herein by reference.

104. An actual controversy now exists between Manfield and Defendants, in

16

that Manfield contends that Defendants are liable under CERCLA, the HSAA, and the state and common law claims alleged in this Complaint, for defense costs and response costs incurred and to be incurred in connection with the release or threatened release of hazardous substances at and from the Property. Manfield further contends that Defendants are obligated to reimburse Manfield for its past, current and future defense and response costs and other damages.

105. Manfield is informed and believes, and on that basis alleges, that Defendant contends in all respects to the contrary.

106. Pursuant to 28 U.S.C. §§ 2201 and 2202, Manfield desires and is entitled to a declaration of the parties' respective rights and duties, including a declaration that Defendants are responsible for investigating, remediating, and mitigating the contamination at, under, or from the Property. No adequate or speedy remedy exists for Manfield in the absence of such a judicial declaration. Accordingly, Manfield requests a declaration from the Court setting forth Defendants' liability for all costs and/or damages resulting from the contamination at, under, or from the Property.

107. A declaration of the rights and obligations of the parties, binding in any subsequent action or actions to recover further defense costs and response costs incurred by Manfield, is appropriate and in the interest of justice. A declaratory judgment is proper because it will obviate the need for multiple suits and provide a complete determination of the rights and obligations of the parties.

## TENTH CAUSE OF ACTION
### (Declaratory Relief Under CERCLA)

108. Paragraphs 1 through 107 are realleged and incorporated herein by reference.

109. An actual controversy now exists between Manfield and Defendants, in that Manfield contends that Defendants are liable under CERCLA, the HSAA, and the state and common law claims alleged in this Complaint, for defense costs and

response costs incurred and to be incurred in connection with the release or threatened release of hazardous substances at and from the Property. Manfield further contends that Defendants are obligated to reimburse Manfield for its past, current and future defense and response costs and other damages.

110. Manfield is informed and believes, and on that basis alleges, that Defendant contends in all respects to the contrary.

111. Section 113(g)(2)CERCLA, 42 U.S.C. §9613(g)(2), provides in pertinent part:

> In any such action described in this subsection the court shall enter a declaratory judgment on liability for response costs or damages that will be binding on any subsequent action or actions to recover further response costs or damages.

112. Pursuant to section 113(g)(2) of CERCLA, 42 U.S.C. § 9613(g)(2), and 28 U.S.C. §§ 2201 and 2202, this Court has jurisdiction to award declaratory relief. Manfield requests a judicial determination of its rights, and the duties and obligation of Defendants, with respect to the alleged release and/or threatened release of hazardous substances at the Property. Manfield further requests that the Court apply all equitable factors and principles in determining the fault and liability of each party in making an allocation and apportionment for contributions by, between and among the parties.

113. WHEREFORE, Manfield prays for judgment as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Manfield prays as follows:

1. For recovery from Defendants of costs which Manfield has incurred or will incur in responding to Releases of hazardous substances, including cVOCs, at the Property, including without limitation, the costs of investigation, clean-up, removal of contaminated soils, soil gas and groundwater, and completing any additional investigation, monitoring and remediation at the Property in amounts to

be determined at the trial of this matter;

  2. For contribution toward any costs which Manfield has incurred or will incur in responding to the Releases of hazardous substances, including cVOCs, at the Property, including without limitation, the costs of investigation, clean-up, removal of contaminated soils, soil gas and groundwater, and completing any additional investigation, monitoring and remediation at the Property in amounts to be determined at the trial of this matter;

  3. For indemnification and/or contribution in full or in part to any costs, damages and liabilities arising from the alleged contamination of the Property which Manfield has incurred or will incur in responding to the Releases of hazardous substances, including cVOCs, at the Property including without limitation, the costs of defense, investigation, clean-up, removal of contaminated soils, soil gas and groundwater, and completing any additional investigation, monitoring, and remediation at the Property in amounts to be determined at the trial of this matter;

  4. For a declaration determining of the rights of Manfield, and the duties and obligations of Defendants, and all others, with respect to defense of the draft Cleanup Order and to the releases and/or threatened Releases of hazardous substances, including cVOCs, at the Property and the alleged damages resulting therefrom;

  5. For a declaration that Defendants are obligated to defend and indemnify and hold Plaintiff harmless from and against any and all claims arising out of the alleged contamination at the Property;

  6. For any and all remedies authorized under CERCLA, 42 U.S.C. § 9607, *et seq.*; CERCLA, 42 U.S.C. § 9613, *et seq.*; and California Health and Safety Code § 25300, *et seq.;*

  7. For actual damages resulting from the Releases at, on, under and emanating from the Property including, without limitation, diminution in property value, loss of use, business interruption, lost rent, and other monetary damages.

8. For attorneys' fees and costs of suit herein incurred as permitted by California Code of Civil Procedure Section 1021.5, or as otherwise provided by law;

9. For prejudgment interest at the maximum rate permitted by law; and

10. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Manfield hereby demands a trial by jury of all issues triable by jury.

Dated: October 1, 2021        **DLA PIPER LLP (US)**

By: _____
ADAM P. BAAS
ELIZABETH C. CALLAHAN

Attorneys for Plaintiff
MANFIELD PARTNERSHIP #2 LP

WEST/296261231